## Warren-Ehret Company to use *v.* Franklinville Ice Manufacturing Company.

*Corporation—Promoters—Sale of land to corporation—Fraud.*

A conveyance of land to a corporation will not be set aside as fraudulent where it appears that the owner of the land was a promoter of the company, and that under the agreement of sale he and two of the other promoters who had done work upon the land were to receive a portion of the purchase money in cash and the remainder in the capital stock of the company, and that by an agreement amongst themselves a portion of the cash was to be paid to the owner while the remainder of the cash and the stock was to go to the other promoters, there being no allegation or proof

that any false representation was made to any one concerning the land, nor was any one induced to subscribe for stock or give credit upon any representation as to the value or character of the land.

Argued Jan. 16, 1901. Appeal, No. 308, Jan. T., 1900, by plaintiff, from order of C. P. No. 2, Phila. Co., Sept. T., 1896, No. 2560, M. L. D., sustaining exceptions to auditor's report in case of Warren-Ehret Company to use of Victor Paul v. Franklinville Ice Manufacturing Company et al., and W. W. Frazier, Receiver. Before McCollum, C. J., Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Exceptions to auditor's report.

From the auditor's report it appeared that in 1895, Samuel Morrison, James Morrison and William J. Blake promoted and organized the Franklinville Ice Manufacturing & Coal Company. The number of shares subscribed for at the time of incorporation was 1901. Of these the Morrisons subscribed for 1,700 shares, and Blake for five shares. Prior to the incorporation an agreement was entered into between the Morrisons and Blake of the first part and the Franklinville Ice & Coal Manufacturing Company of the second part, by which the parties of the first part agreed to sell to the company a lot of ground for $35,500. Part of the purchase money was to be in cash and the remainder in stock. Blake was the owner of the property, although certain work had been done upon it by the Morrisons. The arrangement between Blake and the Morrisons was that Blake was to be paid $4,000 above incumbrances, and the balance, being part of the cash and all of the stock, was to go to the Morrisons. The conveyance was made by Blake directly to the company. It was claimed that the value of the property was only $16,139.30, and that the work done by the Morrisons amounted to about $4,000. It was alleged that the difference between these sums and the purchase money was profit to the Morrisons. It was not shown before the auditor that any false representation had been made to any one, concerning the property, nor did it appear that any one was induced to subscribe for stock or to give credit upon any representation as to its value. The stock taken by the Morrisons remained in their possession unsold until the insolvency of the company. Before the auditor the Morrisons claimed from the fund realized by

the sale of the company's property, payment of a mechanic's lien and a judgment held by them, and Blake claimed under a mortgage which had been given for his share of the purchase money under the agreement above referred to. The auditor disallowed the claims of the Morrisons on the ground that they were not entitled to recover by reason of the profit they had made by the sale of the land to the company. On this subject the auditor reported as follows:

The case of Samuel and James Morrison is very different. They had no ownership in the land. Samuel Morrison had partly put up a building on the land for Blake and James Morrison, according to his own testimony. They were therefore indebted to him for the value of the building, and beyond that value he had no interest in the land.

At the time of the sale the building consisted of four unfinished walls. The value of the unfinished building can be approximately arrived at by his own price fixed by him without competition in bidding $4,350, for furnishing all of the labor and material for making a completed building of the unfinished walls and putting up the engine and boiler house complete after the sale to the company.

It can be assumed that with control of the board of directors and with no competition he did not bid at a losing price, and it is no unfair conclusion to find that the labor and material for the unfinished walls were worth no more than the labor and material required for completing the building inside and out, and building the two additional structures complete.

Part of the cost of labor and material for the building before the sale is included in some of the liens to which the sale was subject—two of these, the Bihlmaier and Wallace and Corr liens, amounting to $354. The estimate of $4,000, owing to him by Blake and James Morrison is, in the opinion of the auditor, all that could be claimed as the value of the unfinished buildings. All therefore that Morrison received above that amount was profit.

He was a promoter of the company, and subscribed with his brother to a controlling interest in the stock. He was the president and a director, and it was his duty to protect the corporation in the transaction with Blake. Instead of so doing he and his brother caused the company to accept the property

at a fictitious price, and with his brother took the balance over Blake's price as profit, thereby getting most of his stock without paying value for it.

There is no evidence that James Morrison had any interest in the land. All that he received was therefore profit.

Such a profit by one standing in a fiduciary relation to the company is a fraud on the company and bona fide stockholders, and the fiduciary making the profit is accountable to the corporation for the amount thereof.

The auditor allowed the claim of Blake.

Exceptions to the auditor's report were sustained by the court in a per curiam opinion in which the court said:

We are not satisfied that any evidence presented impeaches the regularity and good faith of the original sale to the company. In so far as the auditor has come to an opposite conclusion, we think he has fallen into error.

*Errors assigned* were in sustaining exceptions to auditor's report.

*E. Spencer Miller*, for appellant.

*Thomas R. Elcock*, with him *E. E. Stout*, for appellees.

PER CURIAM, February 18, 1901:

On the failure of the appellant to discover manifest error in the auditor's findings of fact as modified by the decree of the court below, in certain particulars, there can be no cause for changing the findings modified as stated herein. In a careful examination of the appellant's claim, and of the elaborate argument made in support of his contention, we find no error which requires or calls for a reversal or modification of the decree as it stands. It follows that an affirmance of the decree is the logical consequence of the investigation made.

Decree affirmed and appeal dismissed at the cost of the appellant.